**Robert L. BELL, d/b/a Crescendo Publishing Company, Plaintiff,**

v.

**COMBINED REGISTRY COMPANY, an Illinois Corporation, Defendant.**

**No. 72 C 1819.**

United States District Court,
N. D. Illinois, E. D.
July 14, 1975.

James E. Beckley, Jeffrey Jahns, Roan & Grossman, Chicago, Ill., for plaintiff.

Carmen V. Speranza, Speranza & Veverka, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FLAUM, District Judge.

This is an action for copyright infringement arising out of the publication of a poem[1] (herein referred to as "Desiderata") by defendant in the August, 1971, issue of *Success Unlimited Magazine*. The case has been submitted to the Court for decision on affidavits, depositions, exhibits, and memoranda. The following shall constitute the findings of fact and conclusions of law.

### THE ISSUES

Plaintiff alleges that the poem (originally untitled) was written by Max Ehrman in Terre Haute, Indiana, in the early 1920s; Mr. Ehrman obtained a federal copyright (No. 962402) on the poem on January 3, 1927 under the name of "Indiana Publishing Company"; Mr. Ehrman bequeathed the copyright to his widow Bertha upon his death in 1945; Bertha Ehrman renewed the copyright in 1954; Bertha Ehrman bequeathed the copyright to her nephew Richmond Wight upon her death in 1962; Richmond Wight assigned the copyright for value to plaintiff in 1971. Plaintiff also claims that in 1948 Bertha Ehrman copyrighted a book entitled THE POEMS OF MAX EHRMAN (copyright No. A28266) which included Desiderata; Bertha Ehrman assigned this copyright in the same year to Bruce Humphreys Inc. for value; in 1968 an assignment was made by the above assignee to plaintiff. Plaintiff claims that the copyrights are valid and have been infringed by defendant. He cites *Bell v. Pro Arts Inc.*, 366 F.Supp. 474 (N.D.Ohio 1973), aff'd, 511 F.2d 451 (6th Cir. 1975), in which his ownership and the validity of the instant copyrights were upheld.

Defendant raises a number of issues and defenses. It claims that Max Ehrman violated the Indiana statute on fictitious names when he applied for the copyright; that the legacy from Bertha Ehrman to Richmond Wight did not include the copyright; that Max Ehrman authorized the publication of the poem without the required copyright notice; that an improper notice was used prior to the recordation of the assignment; that plaintiff authorized publication of the poem without the required copyright notice; that the copyrights were abandoned by Max Ehrman and by plaintiff; that plaintiff is estopped from asserting the copyrights; and that plaintiff is guilty of laches.

Defendant has counterclaimed for the fair value of a retraction which it printed which included an advertisement for the poem.

---

[1] The full text of the work is set out as an Appendix.

## EFFECT OF PRIOR LITIGATION

█ At the outset the effect of prior litigation over the instant copyrights must be delineated. In *Bell v. Pro Arts Inc.*, 366 F.Supp. 474 (N.D.Ohio 1973), aff'd, 511 F.2d 451 (6th Cir. 1975), plaintiff's ownership and the validity of the copyrights were upheld. In *Blonder-Tongue v. U. of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the Supreme Court Court ruled that a prior judicial finding of a patent's invalidity estops the patentee (who was plaintiff in the prior action) from reasserting the patent's validity in a subsequent infringement suit.[2] The Court also noted that due process prohibited applying a collateral estoppel to one who never appeared in the earlier litigation. Applied to the instant case, *Blonder-Tongue* is no bar to defendant's efforts to demonstrate that the copyrights upheld in *Pro Arts* are invalid. See *Boutell v. Volk*, 449 F. 2d 673, 678 (10th Cir. 1971). *Pro Arts*, of course, does have weight as precedent. In this connection it should be noted that the issues of prior publication without notice and of abandonment were never raised or passed on by the court in *Pro Arts*.

## BURDEN OF PROOF

█ To prevail on his claim of copyright infringement plaintiff must show (1) ownership of the copyright and (2) copying by the defendant. The corporate defendant in the instant case does not dispute the fact that it published the poem Desiderata in the August, 1971, issue of Success Unlimited Magazine. A copying issue is not present in this case. Ownership includes such elements as originality, copyrightability, citizenship, compliance with statutory formalities (registration, notice, etc.), and a chain of title reaching to the plaintiff. See *Nimmer on Copyrights* § 141.1.

The copyright act provides that the certificate of registration " . . . shall be admitted in any court as *prima facie* evidence of the facts stated therein." 17 U.S.C. Section 209. There is authority in this Circuit that the certificate constitutes *prima facie* evidence not only of the "facts stated therein" but also of the overall validity of the copyright. *Wihtol v. Wells*, 231 F.2d 550, 553 (7th Cir. 1956). In *Nimmer on Copyrights* Section 141.1, p. 612, however, the author states:

" . . . the only evidence required of the plaintiff to establish *prima facie* ownership in addition to the registration certificate is evidence of the proper affixation of the copyright notice on published copies of the work, and of plaintiff's chain of title from the original claimant."

In the instant case plaintiff does seek to establish his chain of title to the copyrights, whereas the notice issue is raised by the defendant. This is not the typical case in which the presence or absence of the copyright notice on prior publications is a matter uniquely within the knowledge of the plaintiff. In view of *Wihtol, supra,* and the apparent understanding of the parties, the court will treat the notice issue as a potential affirmative defense subject to rebuttal by the plaintiff. Thus to make out a *prima facie* case of ownership of the copyrights, plaintiff must show a registration certificate and a chain of title to him.

## PLAINTIFF'S CHAIN OF TITLE

Defendant raises two issues in an attempt to show that plaintiff is not the proprietor of the copyrights in issue. For the reasons stated below, the Court agrees with the holding in *Pro Arts, supra,* that plaintiff has sustained his burden of proof on this issue.

---

**2.** It estops him unless he can demonstrate that he did not have a Full and Fair opportunity to litigate the validity issue in the prior suit.

As outlined above, plaintiff has submitted the following evidence to show his title to the copyrights:

(1) A certified copy of the certificate of registration of copyright No. 962402; dated January 3, 1927; listing as author of a prose piece beginning "Go placidly . . . " Max Ehrman, and naming as proprietor the Indiana Publishing Company.

(2) Defendant's admission that Indiana Publishing Company was the name under which Max Ehrman did business.

(3) The will of Max Ehrman; defendant's admission that he left his entire estate to his widow Bertha upon his death in 1945.

(4) A certified copy of Bertha Ehrman's renewal of the copyright in 1954.

(5) Bertha Erhman's will, by which she makes a specific devise involving the copyright to Richmond Wight, and a residual devise to a trust. (The legal consequences of this will are disputed).

(6) A copy of the assignment by Richmond Wight to plaintiff, dated May 14, 1971.

The authenticity of these documents is not challenged. This evidence makes out a *prima facie* case showing that the original copyright is owned by plaintiff. Clearly copyrights can be assigned or passed by will, 17 U.S.C. Section 28.

Defendant's first contention is that Max Ehrman did not register the name "Indiana Publishing Company" under the applicable Indiana fictitious name statute.[3] Defendant has submitted a certification from the Recorder of Vigo County, Indiana, which states that no such registration was made. This fact is not contested by plaintiff. The legal implication of this omission, defendant argues, is that Max Ehrman did not obtain a valid copyright under the name "Indiana Publishing Company". Defendant relies on *Haas v. Leo Feist, Inc.*, 234 F. 105 (S.D.N.Y.1916). In that case Judge Learned Hand ruled that a copyright taken in the name of a nonexistent partnership was invalid because under the law of New York State all acts of such nonentities were void. As a result, the court held, the copyright proprietor could not put the proper notice on its work as required by federal copyright law. 17 U.S.C. Section 18 (now Section 19). Plaintiff argues that the decision of this Circuit in *Leo Feist, Inc. v. Young*, 138 F.2d 972 (7th Cir. 1943), repudiates *Haas*; and that no deceptive notice issue is present in the instant case. *Young* held that failure to comply with a Wisconsin statute requiring "music brokers" to register could not defeat a federal copyright registration.

The Court finds that *Haas* and the failure to comply with the Indiana statute do not operate to invalidate the copyright in Indiana Publishing Company. It is conceded that any copyright notices were under the name of Indiana Publishing Company. Thus the federally-required notice provisions are not affected as they were in *Haas*. The law in this Circuit, embodied in *Young, supra*, is that the operation of state law cannot defeat the validity of a federal copyright. Even if the opposite were true, the Indiana statute did not render void all acts of an unregistered fictitious name; but only those acts which misled a third party. For all of these reasons, the Court finds that the defect in registration under Indiana law does not invalidate the copyright.

Defendant's second contention is that the bequest from Bertha Ehrman to Richmond Wight did not operate to pass the copyright to Wight, but only the income from the copyright. In pertinent part, the will provides:

I further bequeath to my said nephew, Richmond Wight, all my right, title

3. Ch. 151 §§ 1–3; Laws of Indiana, Acts of 1909. This statute is now at 10 Burns Ind.Stat. § 50–201 *et seq.*, I.C.1971, 23–15–1–1 *et seq.*

and interest in and to all royalties and income from the writings, poems, and plays of Max Ehrman, including royalties from individual plays.

The will then establishes a trust for Richmond Wight and provides for income to be paid to him from assets of the trust. Under Indiana law, this will is to be construed consistently with the intent of the testator. *Semmes v. Gary National Bank,* 254 Ind. 682, 262 N.E.2d 529 (1970). The federal courts have exclusive jurisdiction to determine questions of title to a copyright. *Harrington v. Mure,* 186 F.Supp. 655 (S.D. N.Y.). The clause of the will in question is susceptible of the interpretation advanced by either party. To evince the intent of the testator, however, the Court must look at the entire will. The testator bequeathed certain assets to a trust, the income of which was to go to Richmond Wight. If, as defendants suggest, the copyright itself went into the trust, then the separate clause bequeathing the copyright income to Wight would be redundant. The testator must have intended to bequeath the copyright itself by her specific grant. This was the interpretation reached by the trustee of the trust itself, and by the court in *Pro Arts.* Therefore, the court finds that the copyright passed by will from Bertha Ehrman to Richmond Wight in 1962.

Defendant does not contest the validity of the assignment to plaintiff. The Court finds that the assignment was valid. Therefore, the Court concludes that plaintiff is the proprietor of copyright No. 962402.

Defendant does not contest the chain of title or validity of copyright No. A28266. The Court finds that plaintiff has established its validity and his ownership by the certificate of registration, the assignment to Bruce Humphreys Inc., and the assignment to plaintiff. The Court concludes that plaintiff is the proprietor of copyright No. A28266.

## DEFENDANT'S ATTACKS ON THE COPYRIGHT

Defendant has raised the following issues by way of defense:

(1) was the copyright forfeited by acts of Max Ehrman in publishing the work without the requisite copyright notice?

(2) was the copyright abandoned by Max Ehrman?

(3) was the copyright forfeited by incorrect notice prior to the assignment to plaintiff?

(4) is the plaintiff estopped from asserting the copyright against defendant?

(5) is the plaintiff guilty of laches?

It is helpful to define the terms forfeiture and abandonment. According to *Nimmer on Copyrights,*

Despite imprecise usage in some of the cases, abandonment must be distinguished from forfeiture of copyright. The latter occurs upon publication of the work without proper copyright notice and is effectuated by operation of law regardless of the intent of the copyright proprietor. Abandonment occurs only if there is an intent by the copyright proprietor to surrender rights in his work. *Id.* at Section 146, p. 656.6

Thus forfeiture presents a narrower technical question; abandonment is a more subjective determination.

## THE FACTS

This case turns upon a reconstruction of events of many years ago. Some of the proof submitted by defendant consists of letters and newspaper articles from the 1930s and 1940s. This material is hearsay, for it is offered in an attempt to reconstruct the facts related in them. The court finds that these materials nevertheless are admissible under the "ancient documents" exception to the hearsay rule. As embodied in the Federal Rules of Evidence (effective July 1, 1975), the

rule excepts from operation of the hearsay rule:

> Statements in a document in existence twenty years or more the authenticity of which is established. Rule 803(16)

It is fair to assume that the material offered by defendant is the best evidence available on the issues present. Insofar as plaintiff's objections go to the weight of the exhibits, they have been considered as the documents are evaluated.

As to the issues raised by the defendant, the court finds the following facts.

Mr. Max Ehrman was the author of the work now known as Desiderata. His diary states that the poem had its early formation in 1921. As he stated therein:

> I should like, if I could, to leave a humble gift . . . : a bit of chaste prose that had caught up some noble moods.

In 1927 he copyrighted the work under his business name—Indiana Publishing Company. In December of 1933, Mr. Ehrman used Desiderata as part of a Christmas greeting sent to friends. At least two of the recipients wrote back thanking him for the cards. Thereafter Mr. Ehrman received a letter from one Merrill Moore, dated July 20, 1942. Mr. Moore identified himself in the correspondence as a practicing psychiatrist presently on active duty with the U. S. Army. He explained his reasons for writing as follows:

> I think you should know that nearly every day of my life I use your very fine prose poem Desiderata in my work . . . Here I have found your philosophy as useful and have used it considerably as part of the psychotherapy I am doing . . . I must have given away a thousand copies in the last few years. A patient, a depressed woman, gave it to me once several years ago, with no name attached . . .

Thereafter, several letters were exchanged between the men regarding Moore's use of the poem. On August 17, 1942, a Mr. Fuller wrote to Moore stating that a package containing autographed copies of the work had been sent a month earlier per Moore's request. By letter of October 5, 1942, Moore thanked Ehrman for the copies he had received and made the following statement:

> . . . I have distributed the beautiful copies which you sent me and want to thank you for them again. I know that I shall carry Desiderata with me and when I get there I shall have it multigraphed for distribution to the soldiers if you have no objection . . .

Ehrman responded to this letter on November 3, 1942:

> Yes, of course, you may distribute multigraphed copies of Desiderata to the soldiers. I am happy to have at least this small part in your splendid work.

Additional correspondence from Moore to Ehrman dated Thanksgiving and November, 1944, stated:

> Also I use Desiderata liberally and always find it helpful. Like a panacea (it cures *everything*) it should be bottled and sold as Dr. EHRMANN'S MAJIC SOUL MEDICINE!!!

> and

> I am continuing to use your priceless prose poem in my work.

Several publications of that time carried stories of Moore's work and his use of Desiderata, see *Saturday Spectator*, "A Poet's Influence", December 15, 1945; *A.A.A.S. Bulletin*, "From the Netherlands East Indies", October, 1945; *DePauw Alumnus*, "Nationally Known Poet and Author Dies", Vol. X, November 1945.

Found in the Merrill Moore papers in the Library of Congress is a typed copy of Desiderata with the author's name under the title but no copyright notice.

The next chapter of this saga takes place in the 1950s. Sometime between

September 1, 1952, and 1956 the Reverend Frederick Kates, serving as the dean of St. John's Cathedral in Spokane, Washington, came across a copy of Desiderata without a copyright notice. On June 1, 1956, Rev. Kates became rector of St. Paul's Church, Baltimore. This church had been founded in 1692. In 1957 Rev. Kates included the poem in the first edition of his book, *Between Dark and Dawn*, (The Upper Room 1957). During the lenten season of either 1959 or 1960 Rev. Kates included the poem on a sheet of devotional material he passed out to about 200 members of his congregation. At the top of the page of this handout containing the poem was the notation:

> "Old St. Paul's Church, Baltimore A.D. 1692."

Reverend Kates also passed out copies of Desiderata at various other times until 1972. Seven editions of his book included the poem. In 1972 he was informed by his publisher that a copyright claim had been asserted.

Both parties agree that a great number of periodicals and commercial firms used Desiderata with the attribution "Old St. Paul's Church, Baltimore, A.D. 1692". The above was the source of such erroneous attribution.

In March of 1967 defendant published the poem in *Success Unlimited Magazine* with this attribution. Mr. Mandino, the officer of defendant in charge of content of the magazine, had received the poem from Father John O'Brien of the University of Notre Dame. Mr. Mandino then saw the poem in Equinox, its publisher stated that he had found the poem in India and that it had no known author. The poem was published again in the August 1971 edition of *Success Unlimited*. This suit was instituted based on this publication.

### FORFEITURE ISSUES

■ The copyright notice is required on material sought to be protected by the Copyright Act, see 17 U.S.C. § 10. A publication authorized on the copyright proprietor which fails to include the correct notice of copyright forfeits the copyright protection and places the material into the public domain. *Nimmer, supra,* § 82. Thus a proprietor who desires to preserve his legal monopoly must be vigilant in policing distributions of the work.

■ To produce a forfeiture of the copyright, the evidence must show: (1) that the poem was published, (2) that no correct notice appeared thereon.[4] According to *Nimmer, supra,*

> . . . publication occurs when by consent of the copyright owner, the original or tangible copies of a work are sold, leased, loaned, given away, or otherwise made available to the general public . . . *Id.* § 49 pp. 194–195.

Defendant cites several instances which, it argues, produced a forfeiture of the Desiderata copyright. The most substantial of these instances, in the court's view, was the distribution of copies of the poem to U.S. troops in the Pacific by Merrill Moore during World War II. There can be no serious dispute that this distribution was a "publication" as defined by *Nimmer, supra.* By letter Max Ehrman expressly authorized the distribution, and copies of the work were distributed to many hundreds of men. What is critical is this factual issue: did the copies distributed by Merrill Moore include the required copyright notice? There is no direct evidence on this question. However, it is a fair inference that the distribution of the work through Merrill Moore was accomplished without the requisite copyright notice. All of the circumstances are consistent with such a conclusion, and inconsistent with a contrary one. The ambience of the exchange of letters between the two men was one of informality and cordiality. Permission to use the work was given gratuitously.

---

4. The act does excuse certain accidental omissions of the notice, see 17 U.S.C. § 21.

Nowhere was a copyright or copyright notice mentioned. The lone copy of the poem found in the Merrill Moore papers did not have such a notice. Nor did the copy that Rev. Kates found some years later. The actions of Max Ehrman are not consonant with those of a copyright proprietor intent on protecting a commercial asset. Defendants have met the burden of showing that a forfeiture was more likely than not.

 In the face of defendant's showing on the forfeiture issue, plaintiff has offered no evidence in rebuttal. A copyright owner has the duty to police all distributions of his work if he desires to preserve his legal monopoly. Indeed, most courts have imposed the burden of proof on the copyright proprietor in the first instance to demonstrate that he has placed the notice on all published copies. Defendant in the case at bar has established *prima facie* that a forfeiture took place. Plaintiff could definitively resolve the issue by producing a copy of the work which was distributed to the troops. It is not unreasonable to place upon a copyright proprietor this ultimate burden. An owner who desires to protect his copyright ordinarily preserves copies of all publications so that proof of notice is always available. Thus the inability of the present proprietor to produce a copy showing notice has substantive significance. In view of the evidence submitted by defendant, and the absence of any rebuttal by plaintiff, the court concludes that a forfeiture has been established by a preponderance of the evidence.

This finding that a forfeiture occurred during World War II means that the poem entered the public domain, and no valid copyright may now be asserted.

Defendant also contends that the work was forfeited when published in newspapers, and when plaintiff used his own name on a flyer sent to accused infringers. The evidence on these two issues is not, in the court's view, sufficient to show a forfeiture.

## ABANDONMENT ISSUES

 Abandonment of a copyright occurs if the owner intends to give up his copyright protection. Some overt act is necessary to evidence such an intent, *National Comics v. Fawcett Pub.*, 191 F.2d 594 (2d Cir. 1951), mere inaction is not enough, *Hampton v. Paramount Pictures*, 279 F.2d 100 (9th Cir. 1960). The presence of a notice is strong evidence of an intent not to abandon, *Stuff v. E. C. Pub.*, 342 F.2d 143 (2d Cir. 1965). A limited distribution, even if not widespread enough to effect a forfeiture, can, coupled with the requisite intent, cause an abandonment.

 On·the basis of the facts outlined above, the court finds that Max Ehrman abandoned his copyright protection. The acts of sending out Christmas cards and authorizing Moore's distribution certainly are strong evidence that the author did not endeavor to protect a commercial property. Even in his diary, the author opines that he has left a "gift" to the world.

## OTHER ISSUES

Defenses of estoppel and laches have been raised by defendant. The court is of the opinion that the evidence fails to support either contention.

 Defendant has counterclaimed for the fair value of a retraction which it printed at plaintiff's behest which included an advertisement for the poem. The court finds that this undertaking cannot be the basis for quasi-contractual liability. There is no evidence that defendant ever contemplated being reimbursed for this expenditure.· At the time both parties apparently were proceeding under the assumption that the copyright in question was valid.

Therefore, judgment is entered for plaintiff on defendant's counterclaim.

## CONCLUSION AND JUDGMENT

In conclusion, the court finds that the author and copyright proprieter, Max Ehrman, both abandoned and for-

feited the copyright in Desiderata. This conclusion follows from the history of his actions regarding the work; a history wanting in the vigilance required by one who seeks to maintain the protection of the federal copyright law.

For the foregoing reasons, judgment is entered for the defendant, Combined Registry Company.

### APPENDIX

Go placidly amid the noise and the haste, and remember what peace there may be in silence. As far as possible, without surrender, be on good terms with all persons. Speak your truth quietly and clearly; and listen to others, even to the dull and the ignorant; they too have their story. Avoid loud and aggressive persons; they are vexatious to the spirit. If you compare yourself with others, you may become vain or bitter, for always there will be greater and lesser persons than yourself. Enjoy your achievements as well as your plans. Keep interested in your own career, however humble; it is a real possession in the changing fortunes of time. Exercise caution in your business affairs, for the world is full of trickery. But let this not blind you to what virtue there is; many persons strive for high ideals, and everywhere life is full of heroism. Be yourself. Especially do not feign affection. Neither be cynical about love; for in the face of all aridity and disenchantment, it is as perennial as the grass. Take kindly the counsel of the years, gracefully surrendering the things of youth. Nurture strength of spirit to shield you in sudden misfortune. But do not distress yourself with dark imaginings. Many fears are born of fatigue and loneliness. Beyond a wholesome discipline, be gentle with yourself. You are a child of the universe no less than the trees and the stars; you have a right to be here. And whether or not it is clear to you, no doubt the universe is unfolding as it should. Therefore be at peace with God, whatever you conceive Him to be. And whatever your labors and aspirations, in the noisy confusion of life, keep peace in your soul. With all its sham, drudgery and broken dreams, it is still a beautiful world. Be cheerful. Strive to be happy.