Robert L. BELL d/b/a Crescendo Publishing Company, Plaintiff-Appellant,

v.

COMBINED REGISTRY COMPANY, an Illinois Corporation, Defendant-Appellee.

No. 75–1753.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1976.

Decided May 14, 1976.

Rehearing Denied July 15, 1976.

James E. Beckley and Jeffrey Jahns, Chicago, Ill., for plaintiff-appellant.

Donald J. Veverka, Carmen V. Speranza, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, and CUMMINGS and PELL, Circuit Judges.

FAIRCHILD, Chief Judge.

Appellant Robert L. Bell, as proprietor of the federal copyright in a prose piece entitled *Desiderata,* brought an action in the district court and alleged copyright infringement by the appellee Combined Registry Company in its unauthorized publication of *Desiderata* in its August, 1971 issue of *Success Unlimited* magazine. The district court held that appellee successfully asserted defenses of forfeiture and abandonment of the copyright.

For the reasons stated herein, we affirm.

I

*Statement of Facts*

The facts in this matter are fully set forth in the district court's opinion,[1] and are only summarized here.

Hoosier poet Max Ehrmann is the undisputed author of the prose poem *Desiderata.* In 1927, he obtained a federal copyright in the work. At Christmastime of 1933, Ehrmann sent out Christmas cards including the text of *Desiderata.* The record contains no copy, nor other evidence to show whether a copyright notice appeared thereon.

The next episode concerning *Desiderata,* and the one upon which the district court based its finding of forfeiture, is related in

---

1. *Bell v. Combined Registry Company,* 397 F.Supp. 1241 (N.D.Ill.1975).

the correspondence between Ehrmann and one Merrill Moore, a United States Army psychiatrist during World War II. Moore first wrote to Ehrmann in 1942 from Denver and indicated that he had distributed an estimated 1,000 copies of *Desiderata* over the years while in civilian practice in Boston. Their letters reveal that Moore requested and received permission from Ehrmann to distribute *Desiderata* to the soldiers as part of his treatment. In November of 1944, Moore twice wrote to Ehrmann from the South Pacific and stated that he continued to use the prose poem in his work.

Ehrmann died September 9, 1945. In late 1945, reports of the Ehrmann-Moore correspondence appeared in several publications, each of which set out *Desiderata* without copyright notice. Additionally, a copy of the poem bearing no copyright notice was found in Moore's papers in his Library of Congress file.

In 1957, one Reverend Kates included a copy of *Desiderata* without copyright notice, in his book, *Between Dawn and Dark.* It was not until 1972 that his publisher notified him that *Desiderata* was under copyright. Reverend Kates also deposed that over the years he had distributed a substantial number of copies of *Desiderata* to his parishioners, and specifically recalled dispensing about 200 copies at a Lenten Service in 1959 or 1960 while he was at St.

Paul's Church in Baltimore, Maryland. During the 1960's and early 1970's, a great number of periodicals printed *Desiderata,* and many firms distributed wall posters of the work, with the erroneous attribution "Found in Old St. Paul's Church, Baltimore, Dated 1692." Reverend Kates' use of *Desiderata* is the apparent source of this widespread erroneous attribution of the work to St. Paul's Church, which was founded in 1692.

## II

### *Use of New Rules of Evidence*

■ Appellant Bell's first assignment of error concerns the propriety of the district court's use of the new Federal Rules of Evidence (hereinafter "Rules") which became effective July 1, 1975.[2] The appellant questions the use of the new Rules in the context of the district court's admission of fifteen documents for their truth under new Rule 803(16).[3] That rule pertains to the admission of ancient documents and excerpts from the operation of the hearsay rule, "(s)tatements in a document in existence twenty years or more the authenticity of which is established." Most of the documents to which appellant objects are the letters comprising the Max Ehrmann-Merrill Moore correspondence during World War II and some periodicals reporting that correspondence.[4]

---

2. Public Law 93–595, 93rd Congress.

3. Insofar as the letters are used to show Ehrmann's consent to Moore's use of *Desiderata,* the letters are not admitted for the truth of the matter stated therein and therefore are not objectionable as hearsay evidence. However, to the extent the letters and other documents are used to prove the fact of distribution of copies of *Desiderata,* and to support the inference that they bore no notice, the letters are potentially excludable as hearsay, unless they fall within an exception to the rule against hearsay.

4. Appellant objects to the admission of the following documents:
1. Letter, dated July 20, 1942, from Moore to Ehrmann.
2. Letter, dated August 17, 1942, from Fuller to Moore.

3. Letter, dated October 5, 1942, from Moore to Ehrmann.
4. Envelope postmarked October 6, 1942, and addressed to Ehrmann from Moore.
5. Letter, dated November 3, 1942, from Ehrmann to Moore.
6. Letter, dated November, 1944, from Moore to Ehrmann.
7. Letter, dated Thanksgiving, 1944, from Moore to Ehrmann.
8. Envelope postmarked January 26, 1945, addressed to Indiana Publishing Company, with return address of 51 Northwest First Street, Miami 32, Florida.
9. Publication of *A.A.A.S. Bulletin,* Vol. 4, October, 1945, No. 10.
10. Article entitled "Nationally Known Poet and Author Dies" from *DePauw Alumnus,* Vol. X, November, 1945, No. 2.
11. Article entitled "A Poet's Influence" from *Saturday Spectator,* dated December 15, 1945.

Preliminarily, we note that this matter did not proceed as a conventional trial. On November 12, 1974, the parties entered into a stipulation as to the authenticity of the various exhibits, including those challenged here. By January of 1975, the parties had submitted their documentary evidence as well as three sets of briefs for the district court's consideration. The record reveals that oral arguments regarding the stipulations and briefs were scheduled for May 20, 1975 before District Judge Flaum. However, as appellant has failed to supply this court with a transcript of that proceeding, we must look to the briefs and stipulations of the parties for any evidentiary objections.

It is appellant's contention that the district court erred in applying the new Rules in that both parties had submitted their evidentiary materials, briefs and stipulations by January of 1975, well in advance of the effective date of the new Rules. Appellee contends that appellant has waived any objection to the use of these Rules by failing to make an objection below. We agree.

Nowhere in the record does it appear that appellant objected to these documents as inadmissible hearsay. While it is true that the parties entered into a stipulation regarding the authenticity of these documents, and thereby effectively reserved objections on other grounds, nowhere does it appear that appellant in fact interposed an objection to consideration of these documents for any purpose.

■ Even if appellant had properly preserved his objection, we would not feel compelled to find that the district court's use of the new Federal Rules of Evidence constituted error. Since 1971, this court has urged that the proposed Rules "be used by the district courts as guidelines and at least given consideration in the exercise of their discretion in making evidentiary rulings." *United States v. McCarthy,* 445 F.2d 587,

591 (7th Cir. 1971), recently cited with approval by this court in *United States v. Senak,* 527 F.2d 129 (7th Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 1500, 47 L.Ed.2d 758, 44 U.S.L.W. 3543 (1976) and in *United States v. Craig,* 528 F.2d 773 (7th Cir. 1976).

Additionally, we note that the enacting clause of the new Federal Rules of Evidence states:

> The following rules shall take effect on the one hundred and eightieth day beginning after the date of the enactment of this Act. These rules apply to actions, cases and proceedings brought after the rules take effect. These rules also apply to further procedure in actions, cases and proceedings then pending, except to the extent that application of the rules would not be feasible, or would work injustice, in which event former evidentiary principles apply.

The new Rules were in effect on July 16, 1975, the date of the district court's entry of judgment for defendant-appellee; thus, the case was pending within the meaning of the enacting clause. The use of the new Rule certainly was feasible particularly in the context of the informal format of the proceedings below, and we fail to see what injustice would inure to the appellant. Appellant claims that he had no notice of the use of the new Rule and argues that under former Rule 43(a) of the Federal Rules of Civil Procedure, the court was obligated to exclude evidence excludable under Illinois law. There is support for appellant's position that under Illinois law the 30-year ancient documents rule cannot be invoked "except to relieve a party from the burden, otherwise imposed, of proving the due execution of the instrument," that is, solely for purposes of authenticating ancient documents. *Koch v. Streuter,* 232 Ill. 594, 603, 83 N.E. 1072, 1076 (1908). Even so, we note

12. Letter, dated January 13, 1934, from Worth M. Tippey to Ehrmann.

13. Letter, dated January 10, 1934, from Halsted L. Ritter to Ehrmann.

14. Letter, dated December 21, 1973, to Mr. Goldstein from Roy P. Basler.

15. Copy of *Desiderata* reproduced from the collections of the manuscript division, Library of Congress.

that Rule 43(a), F.R.Civ.P., before it was amended to reflect the new Rules of Evidence, stated that the rule favoring reception of evidence governs. It has been held that federal courts are not bound by a state exclusionary rule. *International U., U. Brewery, etc., Wkrs. v. Duke & Co., Inc.*, 373 F.Supp. 778 (W.D.Pa.1974), *aff'd without opinion*, 510 F.2d 969 (3rd Cir. 1975) and *Baylor v. Mading-Dugan Drug Company*, 57 F.R.D. 509 (N.D.Ill.1972).

## III

*Forfeiture of the Copyright*

Appellant's main substantive attack is upon the district court's findings that Ehrmann's actions regarding *Desiderata* resulted in both forfeiture and abandonment of his copyright protection in the work. We deal first with appellant's dispute with the finding of forfeiture.

The Copyright Act requires copyright notice on material sought to be protected. 17 U.S.C. § 10. The district court correctly stated the elements of forfeiture as a general publication authorized by the copyright proprietor without the correct notice appearing thereon. *Nimmer on Copyrights*, Section 82.

 The district court cited the Ehrmann-Moore correspondence as one instance of the copyright proprietor's use of *Desiderata* supporting forfeiture of copyright protection. In our review, the Ehrmann-Moore correspondence represents the only such instance in the record capable of supporting a finding of forfeiture. The 1933 Christmas cards were not a general publication capable of divesting copyrights in the work. And, neither the publications of *Desiderata* by Reverend Kates nor those that appeared in various periodicals were shown to have been authorized by the copyright proprietor.

The correspondence between Ehrmann and Moore does supply direct credible evidence of a general publication authorized by the copyright proprietor. In fact, the evidence reveals two authorized distributions of *Desiderata* by Moore: one in Den-

ver in 1942, as revealed by Moore's November 3, 1942 letter to Ehrmann; the other in the South Pacific, as confirmed by Moore's letters of November, 1944.

While it is true that there is no direct evidence to establish that those copies distributed by Moore to soldiers bore no copyright notice, we think that the evidence viewed as a whole supports such an inference. The district court reported that the following considerations comprised the factual underpinnings for the inference that Moore distributed copies of *Desiderata* without the requisite copyright notice:

> The ambience of the exchange of letters between the two men was one of informality and cordiality. Permission to use the work was given gratuitously. Nowhere was a copyright or copyright notice mentioned. The lone copy of the poem found in the Merrill Moore papers did not have such a notice. Nor did the copy that Rev. Kates found some years later. 397 F.Supp. 1241 at 1248.

The inference of no notice appearing on the copies distributed by Moore is a fair one; we cannot say that such a finding is clearly erroneous.

### A. *17 U.S.C., Section 8*

Appellant has belatedly raised on appeal the alternative argument that even if no copyright notice appeared on the copies distributed by Moore, no forfeiture occurred because that distribution by Moore was a publication by the Government. Appellant relies on the second paragraph of Section 8, Title 17, U.S.C., which reads:

> The publication or republication by the Government, either separately or in a public document, of any material in which copyright is subsisting shall not be taken to cause any abridgement or annulment of the copyright or to authorize any use or appropriation of such copyright material without the consent of the copyright proprietor.

Diligent research has produced only two cases alluding to the second paragraph of 17 U.S.C., Section 8. Neither of those cases presented an issue of whether the publica-

tion was "by the Government." In *Time, Incorporated v. Bernard Geis Associates,* 293 F.Supp. 130 (S.D.N.Y.1968), the publication "by the Government" was the Warren Report, the product of a special commission appointed by President Johnson to investigate the killing of President Kennedy. The Warren Report was printed by the Government Printing Office and offered for sale to the public. The copyrighted material involved was Abraham Zapruder's film of the assassination, evidence which was essential to the task of the commission. A member of the commission described the film as "one of the most important pieces of evidence to come before the . . . Commission." *Time, Incorporated, supra,* p. 134.

In *Marvin Worth Productions v. Superior Films Corp.,* 319 F.Supp. 1269 (S.D.N.Y. 1970), the alleged publications "by the Government" were the publicly accessible transcripts and opinions in the criminal prosecutions brought against comedian Lenny Bruce. There can be no question that those publications were "by the Government."

*Public Affairs Associates, Inc. v. Rickover,* 109 U.S.App.D.C. 128, 284 F.2d 262 (1960), *vacated on other grounds,* 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962), *on remand,* 268 F.Supp. 444 (D.D.C.1967) is entitled to some consideration here in deciding what constitutes a publication "by the Government." While it is true that *Rickover* was concerned with the first rather than the second paragraph of Section 8, Title 17, similar considerations were at play. One of the preliminary questions to be decided was whether certain speeches delivered by Admiral Rickover were "publications of the United States Government" and therefore not copyrightable under the first paragraph of 17 U.S.C., Section 8.[5] The Court of Appeals in *Rickover* stated at 284 F.2d 262, 268, with regard to 17 U.S.C., Section 8:

> The Copyright provision should be read, we think, to refer to publications commis-

sioned or printed at the cost and direction of the United States. These would be authorized expositions on matters of governmental interest by governmental authority.

On remand, the district court examined the circumstances of the preparation and delivery of the speeches and the speeches themselves, and determined that the speeches were not written or delivered as a part of the Admiral's official duties. *Rickover, supra,* 268 F.Supp. 444 (1967). The court noted at page 449 that the only connection with the United States Government was in the purely mechanical operation of typing a final draft for duplication on Navy facilities.

■ We do not think that the instant case falls within the ambit of 17 U.S.C., Section 8. It is true that Major Moore was for some purposes an agent of the United States in his capacity as psychiatrist in the United States Army. However, we think that Major Moore's distribution of *Desiderata* to soldiers lacks the requisite degree of governmental association or interest necessary to constitute a publication "by the Government" within the meaning of 17 U.S.C., Section 8.

Clearly, Moore was not directed or specifically authorized by Army superiors to distribute *Desiderata* to the soldiers; distribution was his own idea. At most, he continued, while treating soldiers on behalf of the government, an incident of treatment which he had found desirable in civilian practice. Presumably government personnel may have used government equipment in multigraphing the material. The district court in *Rickover, supra,* was not persuaded that the typing of a final draft of one of Rickover's speeches and duplication on Navy facilities was sufficient governmental association to defeat his copyright in the speech. Nor are we so persuaded in this case. Furthermore, although Major Moore distributed *Desiderata* in order to help his Army patients with their attitudes, such

---

5. The relevant portion of 17 U.S.C., Section 8 first paragraph reads: No copyright shall subsist . . . in any publication of the United States Government, or any reprint, in whole or in part, thereof. . . .

use was not merely comparable in its significance, to the governmental interest in the use of material in *Time, Incorporated v. Bernard Geis Associates*, 293 F.Supp. 130 (S.D.N.Y.1968), where the presidentially convened Warren Commission valued the Zapruder film of the Kennedy assassination as one of the most important pieces of evidence before the Commission. To hold that Moore's distribution of *Desiderata* was a publication "by the Government" would result in a strained construction of 17 U.S.C., Section 8.

### B. *17 U.S.C., Section 10*

Appellant has also argued that the finding of forfeiture should be set aside because in its view, Section 10 of the Copyright Act indicates that publication within the United States is an element necessary to a finding of forfeiture. Section 10 reads:

> Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor, except in the case of books, seeking ad interim protection under section 22 of this title.

Appellant argues that since the improper publication, Moore's distribution of *Desiderata,* occurred overseas, there can be no forfeiture.

We doubt that this section has any such effect, but do not find it necessary to interpret Section 10 on these facts. Clearly, there is ample room in the evidence to infer an authorized distribution of *Desiderata* by Moore while he was still in Denver, Colorado. On October 5, 1942, Moore wrote Ehrmann from Denver, " . . . I have distributed the beautiful copies which you sent me and want to thank you for them again. . . ."

### IV

### *Abandonment of the Copyright*

As set forth in the district court's decision, the conclusion of abandonment rests upon a finding of Mr. Ehrmann's long-term intent to contribute *Desiderata* to the public. The reasonableness of the inferences necessary to be drawn in order to reach that finding is probably less clear than the reasonableness of those supporting a finding of forfeiture by reason of the Moore publications. We do not, however, decide the propriety of the abandonment holding because the finding of forfeiture disposes of the case.

The judgment appealed from is AFFIRMED.