Larry **MORAN**, Plaintiff,

v.

**LONDON RECORDS, LTD.,** a corporation; **MCA Records, Inc.,** a corporation; **Bronski Music Limited,** a corporation; **William A. Bong Limited,** an individual; **Larry Steinbachek,** an individual; and **Steve Bronski,** an individual, Defendants.

No. 85 C 6691.

United States District Court, N.D. Illinois, E.D.

Aug. 29, 1986.

Thomas R. Leavens, Leavens, Armiros & Ross, Ltd., Chicago, Ill., for plaintiff.

Samuel A. Fifer, Charles C. Post, Eileen A. Kamerick, William J. Campbell, Reuben & Proctor, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BRIAN BARNETT DUFF, District Judge.

This action concerns the unauthorized use of a dog food commercial in a rock song. The case comes before the court on the motion to dismiss of defendant MCA Records, Inc. ("MCA").

Plaintiff Larry Moran is a professional commercial announcer. Among his accomplishments is a sound recording used in a television commercial for Kibbles 'N Bits dog food. Kibbles 'N Bits is a product of the Quaker Oats Co. ("Quaker Oats"), which owns the copyright on the commercial and is not a party to this action.

Defendants, variously, are authors of the musical composition "Junk", members of the band "Bronski Beat", and corporations involved in the music publishing and record industries. Among their collective accomplishments is a phonorecord of the song "Junk" which incorporates a reproduction of Moran's recorded performance in the Kibbles 'N Bits commercial.

Moran alleges that neither he nor Quaker Oats authorized this use of the commer-cial, and seeks damages and injunctive relief for copyright infringement. MCA moves to dismiss on two related grounds. First, it argues that Moran has no legal interest in the copyright and therefore lacks standing to sue for infringement. Second, it argues that Moran has failed to join an indispensable party—Quaker Oats, the copyright owner.

## DISCUSSION

The Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of sections 205(d) and 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

Standing to sue under the Copyright Act of 1976 is governed by 17 U.S.C. § 501(b), which provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

Moran recorded his contribution to the Kibbles 'N Bits commercial pursuant to an employment contract providing that he shall have "no right, title or interest of any kind whatsoever in or to the commercial(s)." He concedes that he therefore lacks standing to sue for infringement as the legal owner of the commercial's copyright.

Moran argues, however, that he does have standing to sue as a beneficial owner of the copyright. He points out that his employment contract limits the commercial's use to television broadcasts and links his remuneration to the frequency of this use, and contends that the economic interest this gives him in enforcing the copyright is sufficient to endow him with standing to sue for infringement as a beneficial owner.

The Copyright Act does not define the term "beneficial owner" as used in § 501(b), but the legislative history notes

that "[a] 'beneficial owner' ... would include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 159, *reprinted in* 1976 U.S.Code Cong. & Ad.News. 5659, 5775.

This comment reflects a concept of beneficial ownership consistent with that which courts developed under the 1909 Copyright Act. Applying that Act, courts invoked common law trust principles to hold that when a copyright owner assigned title in exchange for the right to receive royalties from the copyright's exploitation, a fiduciary relationship arose between the parties, and the assignor became a "beneficial owner" of the copyright with standing to sue infringers should the assignee fail to do so. 3 M. Nimmer, *Nimmer on Copyright* § 12.02 (1985). There is no evidence that Congress intended to expand the doctrine of beneficial ownership beyond its origins in property and trust law, when it enacted § 507 of the Copyright Act. Rather, Congress "merely codified the case law that had developed with respect to the beneficial owner's standing to sue," *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir.1984).

Courts applying both § 501(b) and the 1909 Act accordingly have held consistently that standing to sue as a beneficial owner requires establishment of a proprietary right in a copyright derived through the chain of title. *See, e.g., Motta v. Samuel Weiser, Inc.,* 768 F.2d 481, 484 (1st Cir. 1985); *Bell v. Combined Registry Co.,* 397 F.Supp. 1241, 1244 (N.D.Ill.1975), *aff'd* 536 F.2d 164 (7th Cir.1976).

 Moran was never part of the chain of title to the copyright on the Kibbles 'N Bits commercial. He recorded his performance within the scope of his employment, and afterwards his employer obtained a copyright on the completed commercial. When, as here, an employee creates a copyrightable work within the scope of his employment, the employer is considered the author of the work and, "unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201. Moran's employment contract expressly bars him from claiming any "right, title or interest" in or to the commercial's copyright.

Because Moran never held title to the copyright on the Kibbles 'N Bits commercial, he lacks standing to sue for its infringement. It is therefore unnecessary to address MCA's argument concerning Moran's failure to join the copyright owner. MCA's motion is granted and this case is dismissed.

IT IS SO ORDERED.