**Larry MORAN, Plaintiff-Appellant,**

v.

**LONDON RECORDS, LTD., et al., Defendants-Appellees.**

No. 86–2637.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1987.

Decided Aug. 19, 1987.

---

Thomas R. Leavens, McBride, Baker & Coles, Chicago, Ill., for plaintiff-appellant.

Dale M. Cohen, Isham, Lincoln & Beale, Chicago, Ill., for defendants-appellees.

Before COFFEY, RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

Larry Moran sued the defendants—record companies, music publishing companies, and musicians—alleging copyright infringement. On defendant MCA Records' motion, the district court dismissed the suit, holding that Moran had no standing to sue for infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101–810. For the reasons set forth below, we affirm.

## I.

In reviewing the district court's decision to dismiss Moran's complaint, we must accept as true all factual allegations in the complaint. *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Moran's complaint and attached exhibits (see Fed.R.Civ.P. 10(c), which provides that "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes") alleged the following facts.

Moran is a professional commercial announcer who has spent years developing the ability to speak in a wide range of styles, voices, and deliveries. Quaker Oats Company (Quaker) hired Moran to make a sound recording that Quaker used in a commercial for Kibbles 'N Bits dog food. Quaker subsequently secured and registered a copyright on the commercial. Moran signed an employment agreement (which he attached as an exhibit to his complaint) with Quaker that provided that Moran had no "right, title, or interest of any kind or nature whatsoever in or to the commercial." However, the employment agreement stated that it was "subject to all of the terms and conditions of the [Screen Actors Guild Standard 1982 Commercials Contract]" (Commercials Contract). The Commercials Contract (the relevant part of which Moran also attached as an exhibit to his complaint) provided that before Quaker could use Moran's recording for any purpose other than a television commercial, Quaker had to bargain and agree with Moran concerning that proposed use. Neither the employment agreement nor the Commercials Contract granted Moran the right to sue copyright infringers.

Defendants Larry Steinbacheck, Steve Bronski, and Larry Sommerville (Sommerville's name appears as a defendant in the caption to the complaint, but does not ap-

pear in the caption of the district court's opinion or in the caption of Moran's brief) are songwriters and musicians who comprise the musical performing group Bronski Beat. Without Moran's knowledge, Steinbacheck, Bronski, and Sommerville obtained a recording of Moran's performance in the Kibbles 'N Bits commercial and incorporated it into a song they co-authored and recorded, entitled "Junk." Steinbacheck, Bronski, and Sommerville assigned the right to publish "Junk" to defendants Bronski Music Limited (Bronski Music) and William A. Bong Limited (Bong). With Bronski Music's and Bong's permission, defendant London Records (London) manufactured, distributed, and marketed a phonorecord that included Bronski Beat's recording of "Junk". London exclusively authorized defendant, MCA Records, to manufacture, distribute and market the phonorecord in the United States. Moran sued, claiming that the defendants infringed the copyright in the Kibbles 'N Bits commercial by including his recorded performance in "Junk."

## II.

17 U.S.C. § 501(b) grants standing to sue for copyright infringement to the "legal or beneficial owner of an exclusive right under a copyright...." Moran does not assert that he is a legal owner of any exclusive right under the copyright. Thus, we need not decide if the Commercials Contract transferred any legal interest in the copyright or any exclusive right under the copyright to Moran. *See* 17 U.S.C. § 106 (listing the exclusive rights in copyrighted works, including the right "to reproduce the copyrighted work in copies or phonorecords"); 17 U.S.C. § 201(d)(2) (providing that any of the exclusive rights, including any subdivision of the rights listed in § 106, may be transferred and owned separately). Moran bases his standing solely on the theory that the rights granted to him under the Commercials Contract (the right to separately bargain concerning, and receive extra compensation for, any use Quaker makes of his performance other than in a television commercial) make him a beneficial owner of the copyright.

■ The district court rejected Moran's claim of beneficial ownership because Moran was never part of the chain of title to the copyright. *Moran v. London Records, Ltd.*, 642 F.Supp. 1023, 1025 (N.D.Ill.1986). According to the district court, "[c]ourts applying both § 501(b) and the 1909 Act ... have held consistently that standing to sue as a beneficial owner requires establishment of a proprietary right in a copyright derived through the chain of title." *Id.* To the extent that the district court implies that beneficial ownership necessarily depends on having been part of the copyright's legal chain of title, we do not agree with this statement. The two cases the district court cited to support the chain of title theory, *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481 (1st Cir.1985), *cert. denied*, 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985), and *Bell v. Combined Registry Co.*, 397 F.Supp. 1241 (N.D.Ill. 1975), *aff'd*, 536 F.2d 164 (7th Cir.), *cert. denied*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976), do not stand for the proposition that a beneficial owner must have been part of the legal chain of title. *Bell* concerned only legal ownership, not beneficial ownership. *See* 397 F.Supp. at 1244–45. Similarly, *Motta* stands only for the proposition that a person claiming beneficial ownership must claim his beneficial interest through the legal owner; the legal owner's interest, in turn, must be established through the chain of title. *See* 768 F.2d at 484–87. Here, Moran claims his beneficial interest through Quaker, the copyright's legal owner.

■ Although beneficial ownership is not restricted to those in a copyright's legal chain of title, we agree with the district court's conclusion that Moran does not have standing to sue as a beneficial owner. Moran concedes that he performed his part in the commercial within the scope of his employment with Quaker. Therefore, Moran's performance was a work made for hire. *See* 17 U.S.C. § 101 (work made by an employee within the scope of his employment is a work made for hire). 17 U.S.C. § 201(b) provides that the employer

(here, Quaker) is considered the author of a work made for hire, and owns *all* of the rights comprised in the copyright unless the parties expressly agree otherwise in writing. *See Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 667 (7th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987).

■ In enacting § 501(b)'s standing provision, Congress "merely codified the case law that had developed [under the 1909 Copyright Act] with respect to the beneficial owner's standing to sue." *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir.1984); *see* 3 M. Nimmer, *Nimmer on Copyright*, § 12.02, at 12–27 (1986) (§ 501(b) "follows the law established by the courts under the 1909 Act"). As the district court noted, courts applying the 1909 Act "invoked common law trust principles to hold that when a copyright owner assigned title in exchange for the right to receive royalties from the copyright's exploitation, a fiduciary relationship arose between the parties, and the assignor became a 'beneficial owner' of the copyright with standing to sue infringers should the assignee fail to do so." 642 F.Supp. at 1025; *see* 3 Nimmer § 1202, at 12–27 to 12–28; *Cortner*, 732 F.2d at 271. For examples of this trust relationship arising out of an assignment in exchange for royalties, see *National Bank of Commerce v. Shaklee Corp.*, 503 F.Supp. 533, 543 (W.D.Tex.1980) and *Manning v. Miller Music Corp.*, 174 F.Supp. 192, 195–97 (S.D.N.Y.1959). *Compare Bertolino v. Italian Line*, 414 F.Supp. 279 (S.D.N.Y.1976) (opera singer who agreed to record songs as a work made for hire in exchange for percentage of profits did not have standing to sue for copyright infringement). Similarly, a publisher could obtain and hold a copyright in its name in trust for the true author; the author would thus have standing to sue as a beneficial owner. *See, e.g., Bisel v. Ladner*, 1 F.2d 436 (3d Cir.1924) (Publisher who told author "I will attend to the copyrighting for you" held copyright in trust for author.); *Schellberg v. Empringham*, 36 F.2d 991, 994 (S.D.N.Y.1929) (express trust). Nothing in § 501(b) indicates that Congress intended to expand the concept of beneficial ownership beyond that found in the prior case law. Moran has cited no cases applying beneficial ownership in a work for hire arrangement, and our research has revealed none.

Section 501(b)'s legislative history does not help Moran. The legislative history states that "a 'beneficial owner' ... would include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 159, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5775. Although the legislative history does not purport to exhaustively list who may be a beneficial owner, it is significant that the example Congress did give was that of an author who assigned his work in exchange for royalties—the classic example of a beneficial owner in the cases deciding standing to sue under the 1909 Act. Given that no case has held an employee in a work made for hire situation to be a beneficial owner, and that Congress merely intended to codify the existing case law, *see Cortner*, 732 F.2d at 271, the fact that Congress did give only the assignment example supports the conclusion that Congress did not intend to extend the concept of beneficial ownership to include an employee in a work made for hire arrangement.

Moran recorded his performance in the scope of his employment with Quaker; his performance was a work made for hire. Quaker is the commercial's author and owns the commercial's copyright, *see* 17 U.S.C. § 201(b), and Moran's employment contract expressly provides that he has no "right, title, or interest of any kind or nature whatsoever in or to the commercial." Transferring economic rights not amounting to legal title in any exclusive right under the copyright (the case here, by Moran's own concession) will not confer beneficial ownership on the employee. Moran could have secured an interest in the copyright by expressly agreeing with Quaker that he would own the copyright or an exclusive right under the copyright. He did not, and we will not allow Moran into

federal court under his claim of beneficial ownership when Congress has precluded entry by § 201(b)'s work made for hire provision. Therefore, we affirm the district court.

AFFIRMED.