**KNICKERBOCKER TOY COMPANY, INC., Plaintiff-Appellant,**

v.

**AZRAK–HAMWAY INTERNATIONAL, INC., Defendant-Appellee.**

**No. 185, Docket 81–7355.**

United States Court of Appeals, Second Circuit.

Argued Oct. 28, 1981.

Decided Jan. 19, 1982.

Samuel J. Stoll, New York City (Stoll & Stoll, P. C., Robert S. Stoll, Doris S. Hoffman, New York City, of counsel), for plaintiff-appellant.

Jesse Rothstein, New York City (Amster, Rothstein & Engelberg, Anthony F. LoCicero, New York City, of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, and FRIENDLY and PIERCE,* Circuit Judges.

PIERCE, Circuit Judge:

This is an appeal by plaintiff from a post-trial order of Judge Charles E. Stewart, Jr., of the Southern District of New York dismissing a complaint alleging copyright infringement and trademark violation with respect to plaintiff's "Wrist Racers" toy. Plaintiff's amended complaint alleged two causes of action for copyright infringement under Sections 501–505 of Title 17 of the United States Code and one cause of action for trademark violation under Section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a). Jurisdiction was based on 28 U.S.C. §§ 1338, 1400.

## FACTS

Since 1979, plaintiff-appellant Knickerbocker Toy Company, Inc. (Knickerbocker) has marketed a highly successful children's toy under the trade name "Wrist Racers." The toy consists of a clear plastic housing that can be attached by a strap to a child's wrist. By pushing a button, the child can open the housing lid and launch a miniature wind-up automobile down a ramp which slides out of the housing base. In 1980, defendant-appellee Azrak-Hamway International, Inc. (Azrak) decided to market a similar toy called "Shooters."

Both Wrist Racers and Shooters are marketed with a choice of three different miniature automobiles: Wrist Racers offers ver-

* When this appeal was heard, Judge Pierce was a District Judge for the Southern District of New York, sitting by designation. He was in- ducted as a judge of this Court on November 30, 1981.

sions of a Porsche, a Datsun and a General Motors Corvette; Shooters features a "Spider Man" model, a version of a Pontiac Trans-Am and, like Wrist Racers, a version of a Corvette. Knickerbocker published its Corvette design in September of 1979, and the design was registered with the United States Copyright Office on April 22, 1980.

On February 13, 1981, Knickerbocker commenced an action alleging that the Shooters Corvette had been copied from the Wrist Racers model and thereby infringed on Knickerbocker's copyright. Knickerbocker further alleged that an Azrak trade catalogue which was being distributed at the time at the "Toy Fair 1981" in New York City used photographs of Knickerbocker's Wrist Racers product to illustrate an advertisement for Azrak's Shooters in violation of Section 43(a) of the Lanham Act. Knickerbocker moved by order to show cause for injunctive relief with regard to both causes of action.

On February 13, 1981, the trial judge granted a temporary restraining order forbidding Azrak from soliciting, taking or filling orders for its Shooters toy. A hearing on Knickerbocker's motion for a preliminary injunction was commenced on February 27, 1981, and continued on April 1, 2 and 6 of 1981. By consent of the parties, the hearing was consolidated with a trial on the merits pursuant to Rule 65(a)(2) of the Fed.R.Civ.P. On March 19, 1981, Knickerbocker filed an amended complaint which, in addition to the original allegations, stated a third cause of action alleging that an Azrak "blister" display card that Knickerbocker had apparently obtained during discovery used a photograph of the Wrist Racers product in violation of Knickerbocker's copyright.[1]

Knickerbocker's Vice President of Research and Development, Michael Satten, testified at trial that Knickerbocker's Wrist Racers miniature Corvette was a highly stylized version of the General Motors original. Satten stated that the Wrist Racers Corvette and the Shooters Corvette had "the same design configuration of a foreshortened rear deck and a foreshortened front end as compared to a regular Corvette." Satten further stated that the two toys were stubbier than the General Motors car and that the toys had "accentuated" window areas.

Leslie Turbowitz, Azrak's Vice President of Merchandising and Operations, testified that the design of its Corvette had been based on a scale model of a 1979 Corvette. Turbowitz stated that a scale model kit of the production car had been sent to Azrak's designers in Hong Kong with instructions to produce a toy body that would accept a wind-up motor and still fit within the wrist housing. Azrak contended that the similarity between its design and that of Knickerbocker's Corvette was the result of these practical necessities rather than copying. However, Turbowitz admitted that Azrak's Hong Kong designers had samples of the Wrist Racers toy in their possession when the Shooters Corvette was designed.

In addition, Azrak introduced the testimony of an automotive expert who stated that in his opinion the Shooters Corvette was based on a 1978 or 1979 production car, whereas the Knickerbocker toy was patterned after a 1978 "Indy" pace car Corvette or a 1979 "accessorized" version. Evidence presented at trial indicated that these latter versions of the General Motors car differ significantly from the production cars of the same years, e.g., the "Indy" and "accessorized" Corvettes had different "striping packages" than did the production cars, and the former had a rear spoiler and a front air dam which were missing on the production models.

After reviewing the evidence, the trial judge found that Azrak had not copied the Knickerbocker Corvette. Rather, the judge stated that "[i]t seems clear that [Azrak] copied a 1979 production car, and the [Knickerbocker] car is a copy of the 1978 Indianapolis 'Indy' or pace car."

1. A "blister" card is a cardboard display card on which is printed promotional copy and illustrations of the product. The card is treated to accept a plastic "blister" in which the product itself is contained for sale at retail.

With regard to the Lanham Act claim, plaintiff introduced evidence showing that Azrak had used artwork depicting the Wrist Racers toy in its catalogue advertisement for its Shooters toy. However, Azrak's Turbowitz testified that the catalogue had been withdrawn after four days of distribution at the toy fair and that the offending illustration had been obliterated from all remaining catalogues. Turbowitz further testified that Azrak had received no orders for the Shooters product between the beginning of the toy fair, when the catalogue was first distributed, and the date of his testimony, a period of some seven weeks.

In his oral findings, the trial judge stated that there had obviously been some irregularities with regard to the catalogue. However, the judge did not decide whether or not these irregularities amounted to a violation of the Lanham Act. Rather, the judge found that since the irregularities had been eliminated and were unlikely to recur, there was no basis for any injunctive relief. Further, he found that since there was no evidence that Azrak had made sales of its Shooters toy as a result of the catalogue, there existed no basis for an award of damages.

Judge Stewart dismissed the Lanham Act claim but held that Knickerbocker could return to court and seek damages if it obtained evidence that Azrak received orders for the Shooters product as a result of the offending catalogue.

The trial judge also dismissed Knickerbocker's third cause of action claiming copyright infringement with regard to the blister card which Knickerbocker apparently obtained from Azrak during discovery. The blister card presented copy related to Azrak's Shooters but used an illustration of Knickerbocker's Wrist Racers product. Turbowitz testified that the card was simply a sample which Azrak had produced in order to position the artwork, and that a totally different illustration would be used for the production run of the card. In dismissing this cause of action, Judge Stewart stated that "the short answer is that [the blister card] was only an office copy which was never used."

## DISCUSSION

■ To prevail on a claim of copyright infringement, a plaintiff must show both ownership of a valid copyright and copying. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir. 1977); 3 M. Nimmer, *Nimmer on Copyright* § 13.01 at 13–3 (1981). Neither the ownership nor the validity of Knickerbocker's copyright of the design of its toy Corvette was contested at trial and they are not at issue on this appeal.

■ When, as here, there is no direct evidence of copying, plaintiff may prove copying by demonstrating "access and 'substantial similarity' of the two works." *Novelty Textile Mills, Inc. v. Joan Fabrics Corp., supra*; 3 Nimmer, *supra*, § 13.01[B] at 13–6. Access to the copyrighted Corvette toy was conceded by defendant at trial. The issue presented to us is whether the trial judge erred in determining that the two toy Corvettes were not substantially similar.

Judge Stewart did not simply find that no copying had occurred in this case: rather, he made factual findings that the designers of the two toys had based their designs on different versions of the General Motors Corvette.

In short, Knickerbocker's position on appeal is that the trial judge erred in determining that no copying had occurred. Rule 52(a) of the Fed.R.Civ.P. provides that "[f]indings of fact shall not be set aside unless clearly erroneous ...." Simply stated, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court is on the entire evidence left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

■ On the record below, we are not "left with the definite and firm conviction" that the trial judge erred in finding that no copying occurred. Rather, it is clear from

the record that Judge Stewart examined the two toys quite closely, set forth their differences, and came to specific conclusions regarding the origins of their designs. The judge stated that the two toy Corvettes were "significantly dissimilar", noting that "[s]ome of the differences, for example, are the absence of a skirt on the defendant's car, the scoop on the defendant's car on the hood, which does not appear on the plaintiff's car, the ratio of overhang . . . with respect to the wheelbase, [and] the headlights [and] the rear lights are different."

The judge heard extensive testimony on the issue of similarity from both Knickerbocker's and Azrak's witnesses and from an automotive expert who testified for Azrak. Upon reviewing that testimony and the exhibits introduced at trial, we find that the trial judge's finding regarding copying was not clearly erroneous.

With regard to the Lanham Act claim, Judge Stewart found that Knickerbocker had failed to demonstrate an adequate basis for relief. Once a trademark violation has been shown, "[t]he burden is [then] the infringer's to prove that his infringement had no cash value in sales made by him." *Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*, 316 U.S. 203, 206–07, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 (1942). Without determining that a violation had occurred, the trial judge found that Azrak had met this burden. As noted, Azrak's Vice President of Merchandising and Operations testified that no orders for its Shooters toy had been received in the approximately seven week period since the alleged violation had taken place. Knickerbocker introduced no evidence to the contrary. On this evidence, Judge Stewart's finding that no sales had resulted from the distribution of the offending catalogue was not clearly erroneous and must be affirmed.[2]

▮ Further, the trial judge's finding that Azrak had ceased distributing the cata-logue after four days coupled with the evidence heard at trial that Azrak contemplated no further misuse of Knickerbocker's Wrist Racers product adequately supported the denial of injunctive relief. In his order dismissing the amended complaint, Judge Stewart stated that

[i]n the event that defendant obtains orders for its SHOOTERS products based on the [Azrak] 1981 Catalogs distributed by it during the first four days of Toy Fair 1981, . . . plaintiff may reopen this Judgment with respect to the [Lanham Act] Cause of Action only, and may attempt to demonstrate that defendant's activities with respect to such 1981 [Azrak] Catalogs relative to such orders and the parties placing them, constitute a violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. 1125(a), and that plaintiff has been damaged thereby.

We find Knickerbocker's interests with respect to the Lanham Act claim were adequately protected by the trial judge's order.

▮ Finally, on the record herein, the copyright claim with respect to the blister card falls squarely within the principle of *de minimis non curat lex*, and the dismissal of that claim is affirmed.

The order of the district court denying injunctive relief and dismissing the complaint is in all respects affirmed. Each party shall bear its own costs on appeal.

---

**2.** The Court notes that with reference to the Lanham Act claim, Knickerbocker alleged that Azrak was using Wrist Racers' parts in conjunction with the demonstration models of Shooters that were being shown at the toy fair. However, in light of the determination that Knickerbocker has shown no basis for relief under the Lanham Act, it is unnecessary to determine whether this alleged use of Knickerbocker parts constituted a violation of the Act.