**Marcelo Ramos MOTTA, etc., et al.,**
**Plaintiffs, Appellants,**

v.

**SAMUEL WEISER, INC., etc.,**
**Defendant, Appellee.**

**No. 85-1050.**

United States Court of Appeals,
First Circuit.

Argued June 4, 1985.
Decided July 29, 1985.

Robert Edmond Mittel, Portland, Me., with whom Mittel & Hefferan, Portland, Me., was on brief, for plaintiffs, appellants.

James R. Erwin, York, Me., with whom Strater, Hancock & Erwin, P.A., York, Me., was on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, DAVIS * and TORRUELLA, Circuit Judges.

DAVIS, Circuit Judge.

In this case of copyright and trademark infringement,[1] Marcelos Ramos Motta and the Society Ordo Templi Orientis, plaintiffs below, appeal from an adverse decision by the United States District Court for the District of Maine, following a five-day bench trial. At issue is the copyright ownership of the works of Aleister Crowley, an English mystic, author and one time leader of the cult known as Ordo Templi Orientis. The district court held that appellants failed to establish that they own the Aleister Crowley copyrights either in their individual capacities or as members of Ordo Templi Orientis, and therefore entered judgment in favor of the defendant Samuel Weiser, Inc., 598 F.Supp. 941. We affirm.

## I.

The origins of this case lie in the mystical and occult world of Ordo Templi Orientis (OTO).[2] OTO was founded by turn-of-the-century German Masons. Its traditions and rituals emanate from masonic orders which date as far back as the Crusades. For purposes of the current appeal, all we need to know about the rites of the cult is that OTO members pass through a series of grades (*e.g.*, IX° ) by taking part in secret rituals. OTO's supreme authority carries the title "Outer Head of the Order" (Outer Head).

Aleister Crowley, the best known Outer Head, wrote the constitution for the order and published part of it in 1919. During his tenure as Outer Head, he also wrote

---

* Of the Federal Circuit, sitting by designation.

1. Because the district court and the parties have addressed only the copyright issue, this appeal *does not concern count IV* in the complaint which alleged infringement of appellants' trademarks and servicemarks. Nor does this appeal involve count V dealing with an agreement between appellant Motta and appellee as to publication of a book authored by Motta.

2. Ordo Templi Orientis (OTO) must be distinguished from Society Ordo Templi Orientis (SOTO) and California Ordo Templi Orientis (COTO). The latter two are further described in Part II, *infra*.

and copyrighted many books, poems and letters which form the literary nucleus of OTO's beliefs. Remaining as Outer Head until his death in 1947, Crowley left the copyrights for all his works to OTO in his will which neither party has contested. These works were shown to have a substantial value in the occult book market.

Crowley named Karl Germer as his successor as Outer Head. After attaining OTO's highest position, Germer who lived in New York City, moved to California. He obtained custody of Crowley's existing literary works and published several of the writings. At the time of Germer's death in California in 1962, no one had been expressly named as successor to the ruling position of Outer Head.[3] The ensuing disputes between factions and purported members—further detailed in Part II, *infra*—is where the trouble started. Motta is a member of OTO and head of one of the battling groups.

Defendant and appellee Samuel Weiser, Inc. (Weiser), a Maine corporation, publishes and distributes cult books. The annual gross income of Weiser is $1,400,000. Of this total, approximately 5% has come from publishing Crowley works (*i.e.,* $70,-000). Appellants allege that they own the copyrights to ten Crowley works which Weiser has published. Weiser responds (among other things) that appellants are without standing to bring the present action because they are not the owners of any of the exclusive rights in the works of Crowley.[4]

At the trial, there was presented conflicting evidence as to (a) Motta's claim that Germer had appointed him Outer Head; (b) whether others had at least as much right as Motta (and his corporation, appellant Society Ordo Templi Orientis (SOTO)) to the position of Outer Head or title to the Crowley works; and (c) the current status of OTO as an unincorporated organization.

The district court found that appellants' ownership rights could not stem from Motta's capacity as Outer Head because they did not prove that he in fact occupied that position. In addition, it was found that because there were other people and organizations who were arguably members of OTO, but not members of SOTO, SOTO is merely a corporate member of OTO. Accordingly, the district court held that appellants could only support their claim of ownership as mere members, and representatives, of OTO. However, because (1) OTO is an unincorporated association, not recognized as a legal entity, (2) the succession to the position of Outer Head is undecided, and (3) the membership of OTO is indeterminate, OTO was held to be incapable of owning property through its individual members. In sum, appellants were found to have failed to meet their burden of establishing ownership of the copyrights at issue, and the district court entered judgment in favor of Weiser.

## II.

It is beyond dispute that appellants, as plaintiffs in a copyright infringement action, had the burden of proof. 3 Nimmer, *The Law of Copyright,* § 13.01 (1984). They must prove each of the two elements of copyright infringement: (1) ownership of the copyright; and (2) copying by the defendant. *See Knickerbocker Toy Co. v. Azrak-Hamway International, Inc.,* 668 F.2d 699 (2d Cir.1982); *Ferguson v. National Broadcasting Co.,* 584 F.2d 111 (5th Cir.1978). In this appeal, we are confronted with an issue concerning only the former facet.

Under 17 U.S.C. § 501(b), only "the legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or

---

**3.** It is the parties' common ground that the Outer Head of OTO, if one now exists, can enforce the Crowley copyrights.

**4.** In the alternative, appellee asserts that another OTO member, who (Weiser contends) is at least a co-owner of the copyrights, gave Weiser a license to publish whatever works of Crowley it chose. This argument was not mentioned by the district court, and in view of our disposition it need not be considered by us.

she is the owner of it." If a plaintiff is not the author of the copyrighted work then he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright. *See Bell v. Combined Registry Co.*, 397 F.Supp. 1241, 1245 (N.D.Ill.1975), *aff'd*, 536 F.2d 164 (7th Cir.), *cert. denied*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). Absent this showing, a plaintiff does not have standing to bring an action under the Copyright Act. *Cf. Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir.1982).

■ A determination of ownership is a conclusion of law based on underlying facts. 3 Nimmer, *supra,* § 13.01[A]. The district court's conclusion that appellants' failed to establish ownership will be overturned only if it was erroneous as a matter of law, and the underlying factual findings will not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a).

The first link in the chain of title occurred here when Crowley devised his copyrights to OTO. Under 17 U.S.C. § 201, ownership of copyright may be transferred by bequest in a will. We do not take issue with appellants' contention that an unincorporated association can take property by bequest and that the intent of the testator should be effectuated. However, the hurdle with which appellants are confronted relates to their capacity to enforce the copyright almost forty years after Crowley's demise. This requires that they establish standing as the beneficial owners of the copyright either in their individual capacities or as members of OTO. We discuss each alternative.

■ A. Appellants concede that Motta does not have or claim personal ownership of the Crowley copyrights, but contend that his ownership rights derive from his asserted capacity as Outer Head. Similarly, appellants argue that SOTO is entitled to enforce the Crowley copyrights because, as Outer Head, Motta had the power to incorporate the previously unincorporated OTO. These arguments both depend on whether appellants have met their burden of establishing that Motta is Outer Head.

The trial court's findings reveal that: At the time of Germer's death in 1962, Motta lived in Brazil allegedly working on behalf of OTO and "A.A.," another occult order of mystical learning. He had been initiated into OTO by Germer around 1955, and subsequently inducted into the IX° grade. Later on, Motta contends, Germer made him Outer Head while on his deathbed. Then, allegedly to provide a corporate structure for OTO, Motta incorporated his five member faction in Tennessee in 1978 under the name Society Ordo Templi Orientis (SOTO).

At trial, it was also shown that Motta is not the only claimant to Crowley's literary legacy. During World War II Crowley visited Grady McMurtry, a California resident. There are letters (the "Caliphate Letters") from Crowley which indicate that McMurtry was considered as a possible successor to Germer. During one of his visits, Crowley inducted McMurtry into the IX° grade. Prior to Crowley's death, Germer, who recognized McMurtry's preeminent status in OTO, had a falling out with McMurtry. After a period of disinterest which followed Crowley's death, McMurtry returned to California and decided that the OTO organization had disintegrated. He then attempted to rehabilitate the cult. Although he does not claim to be Outer Head, McMurtry contends he is the *de facto* leader of a group of California followers of Crowley who believe they are the legitimate members of OTO. This faction was incorporated in California under the name California Ordo Templi Orientis (COTO); it has approximately 750 active members. In addition, there are other groups which claim the OTO legacy: Joseph Metzger in Switzerland, Kenneth Grant in England, and a former associate of Crowley, Frederick Mellinger.

In attempting to establish Motta's claim as the Outer Head, appellants offered extrinsic evidence in the form of a letter to Motta from Germer's wife Sascha, written five days after her husband's death. Sascha Germer said in the letter that Germer's

last words were that Motta was the "Follower." Appellants have argued that this statement conclusively establishes that Germer appointed Motta to follow him as Outer Head. The district court found, however, no evidence that "follower" has any particular meaning in the OTO vocabulary, or that Motta, prior to the current action, had ever interpreted "follower" to mean that he was Outer Head. Moreover, whatever the statement might have meant, it was afforded little weight by the trial court because it was second generation hearsay, and Sascha Germer's credibility was "subject to profound question." We are convinced that these determinations, together with the other evidence on which it relied, are sufficient for the district court to have found that Germer did not appoint Motta as Outer Head. Appellants have not persuaded us that these findings are in any way clearly erroneous.

Appellants also attempted to establish Motta's accession to Outer Head by Motta's own testimony. Although he claimed at trial that he was Outer Head, Motta had said a number of times prior to trial that he was not Outer Head, was not eligible to be Outer Head, had to be elected to the position, and was uninterested in OTO. Not surprisingly, the district court found his court testimony and his previous statements "rife with contradictions." Attempting to rehabilitate Motta's credibility, appellants have urged that a basic precept of OTO is that persons in leadership positions must conceal their status in order to protect themselves from potentially hostile members of the public. Since in their view Motta has the right to conceal his membership and position, appellants argue (citing *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)) that the district court violated his rights under the First Amendment by finding that it made little difference whether Motta's dissembling had a doctrinal basis. But the fact is that, during cross and redirect examination, Motta was repeatedly confronted with

these contradictions and did not offer any explanation. The excuse of belief in a religious doctrine of concealment came from appellants' counsel in a post-trial brief. And even if such a tenet existed in fact, there was no evidence that either Crowley or Germer, during their respective reigns, kept their positions in the dark. Also, as the trial judge indicated, the source of dissembling is irrelevant to a determination of credibility, which includes (among other things) the fact that the witness actually may be dissembling. Because we must give due deference to the trier's right to determine credibility of an admitted dissembler, we have to accept as not clearly erroneous the district court's finding that Motta is not the Outer Head. It follows that the district court did not err in concluding that neither Motta nor SOTO owns the Crowley copyrights by virtue of the former's alleged position as Outer Head.[5]

B. Motta and SOTO may still have a valid claim to ownership if they can prove that, as plain members of an unincorporated association, they can enforce the copyrights. Appellants correctly cite *Byam v. Bickford*, 140 Mass. 31, 2 N.E. 687 (1885), for the proposition that members of a voluntary association can take title to real property as tenants in common. Since Motta and SOTO are both members of OTO (the argument goes), they own the Crowley copyrights as tenants in common with the other OTO members. The district court found, however, that the membership and structure of OTO is too indefinite and amorphous, so that its members lack the capacity to own property as tenants in common, thereby precluding appellants' standing to enforce the Crowley copyrights. We cannot fault this analysis.

■ An unincorporated association is defined as a body of persons acting together and using certain methods for prosecuting a special purpose or common enterprise. Black's Law Dictionary 111 (5th ed. 1979).

---

**5.** We have also reviewed appellants' appeal relating to its motion to amend the record, and find no reason to disagree with the district court's conclusion that even if the proffered documents had been admitted, the outcome would not have been altered.

Such an organization is not recognized as a legal person or entity capable of owning property on its own. *See Moffat Tunnel League v. United States*, 289 U.S. 113, 53 S.Ct. 543, 77 L.Ed. 1069 (1933). But this rule is not absolute. Courts may determine that ownership vests in the individuals who comprise the organization. *See Byam, supra.*[6] Thus, the inquiry must be whether OTO is the type of association as to which the law permits ownership rights to vest in the association's members.

In *Byam v. Bickford, supra*, real property was permitted to vest in an unincorporated association's members because all of the members could be ascertained. In contrast, where membership is not fixed and new members are continually being added and lost, such vesting has not been allowed. *State v. Sunbeam Rebekah Lodge No. 180*, 169 Or. 253, 127 P.2d 726 (1942). Without this limitation of an ascertainable membership, the public, or even the members of the association, would not have notice or be cognizant of who claimed ownership in a particular property. This policy is exemplified in *Johnson v. South Blue Hill Cemetery Ass.*, 221 A.2d 280 (Me. 1966), where a bequest was made to an unincorporated association. In analyzing the association's capacity to own property, the Supreme Judicial Court of Maine found that, even though the association held meetings and elected officers, it was too amorphous in light of the fact that membership was uncertain, could not be ascertained with any reasonable degree of accuracy, and there was no by-law which regulated or defined the criteria for membership eligibility. The court held that the association did not have sufficient capacity to own the devised property, thus precluding vesting of title in the alleged members.

■ In the current case, there are many claimants to the OTO legacy and to OTO membership, including SOTO and COTO. Also, there was no evidence of any standards identifying membership in OTO or of

successorship to be the Outer Head. Since Crowley's death, the status of OTO has led to disputes between different factions, some of which allegedly expelled the others. Appellants failed to put forth evidence establishing a particular group of people that could lay exclusive claim to membership in OTO. As in *Johnson, supra*, the district court found that OTO is not an actual assemblage of people associating for some common discernible purpose, but is now merely an amorphous and attenuated fraternal fellowship existing only in the abstract. Appellants have not persuaded us of clear error (on this record) in this finding or its subsidiary findings. They have therefore failed to meet their burden of establishing themselves as beneficial owners of the Crowley copyrights.

■ C. Notwithstanding what we have just decided, appellants assert that their right to due process and procedural regularity was impinged because the district court decided the case on the basis of an issue (*i.e.*, OTO's lack of this type of capacity) not addressed by the parties in the pleadings or at trial. Citing *Reynolds v. Stockton*, 140 U.S. 254, 11 S.Ct. 773, 35 L.Ed. 464 (1891), appellants urge that the issue of OTO's capacity to own property was not "tendered by the pleadings," and that such capacity was assumed by both parties. We believe, however, that the requirement in *Reynolds* that such issue must be "tendered by the pleadings" was satisfied in this case.

In their complaint, appellants alleged their ownership of the Crowley copyrights as individuals. In its answer, appellee alleged, by way of an affirmative defense, that appellants lacked standing under 17 U.S.C. § 501(b). There is no admission in the pleadings and the parties did not in any way stipulate to OTO's capacity to own property. Moreover, as appellants themselves point out by citing *Byam v. Bickford, supra*, the law clearly requires that the membership and form of an unincorpo-

---

6. In addition, the right of ownership also may vest in the association upon the authority of statute. Appellants have not pointed the district court or this court to any such statute, nor have we been able to find such statutory authority.

rated association must be ascertainable for that association to have the capacity necessary for its members to own the property together. Appellants cannot now say (as they do) that, had they been on notice of this element, they would have proffered a "mountain of evidence" consisting of membership lists and regulations setting forth membership criteria. Not perceiving or recognizing one of the legal elements necessary to meet one's burden is not the responsibility of anyone but the party who carries that burden.[7]

The issue of ownership goes to standing to bring a copyright action. Appellants' infringement claim is derived from OTO's alleged ownership of the copyrights. OTO's capacity to assert ownership through its members, when no Outer Head has been established, is inherent in appellants' burden of proving ownership. The district court did not commit error in addressing that sub-issue of OTO's capacity to own the Crowley copyrights.

For these reasons, we hold that the district court properly concluded that appellants failed adequately to prove ownership of the Crowley copyrights. The judgment of the district court is therefore affirmed.

AFFIRMED.

---

**7.** The decisions on which appellants rely relate to issues *not* raised by the pleadings or tried by    the parties.