# CAMERON INDUSTRIES INC., Plaintiff,

v.

## ALBERT NIPON CO., INC., Defendant.

### No. 86 Civ. 2279 (EW).

United States District Court, S.D. New York.

March 31, 1986.

As Amended April 4, 1986.

Helfat & Helfat, New York City (Bernard A. Helfat, of counsel), for plaintiff.

Polier, Tulin, Clark & Zalk, New York City (Stephen Wise Tulin, of counsel), for defendant.

## OPINION

### FINDINGS OF FACT and CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

Plaintiff, Cameron Industries Inc. ("Cameron"), commenced this action against Albert Nipon Company ("Nipon") seeking injunctive relief and damages for defendant's alleged infringement of plaintiff's copyright in a fabric design referred to as "Pattern 137." Plaintiff, a converter of fabrics, alleges that Nipon, a designer and manufacturer of women's garments, infringed its copyright in Pattern 137 by manufacturing or causing to be manufactured, and by selling garments made from fabrics imprinted with plaintiff's copyrighted design.

After hearing oral argument on plaintiff's application for a temporary restraining order, the Court, with the parties' consent, ordered the hearing on plaintiff's motion for a preliminary injunction consolidated with the trial on the merits under Fed.R. Civ.P. 65.

Soheil Khayyam, Cameron's president, Sheelagh Roth, Cameron's designer, and Stephen Sladkus, Cameron's sales manager, testified that sometime in early March 1985 plaintiff obtained a design referred to as the "bow tie" design from Nina Lewin, a textile design studio. According to plaintiff's witnesses, they showed the bow tie design to Susan Chin, defendant's designer, shortly after obtaining it from the Nina Lewin studio. Plaintiff's witnesses testified that Chin expressed interest in the design and requested that Roth make certain alterations in the pattern. Roth testified that she drew sketches to reflect the changes suggested by Chin, that she and Chin discussed the alterations over a two or three day period, and that she left the sketches with Chin, who retained them for approximately ten days. Roth also acknowledged that plaintiff did not yet own the design at the time she allegedly first showed it to Chin.

Khayyam testified that after Chin held the sketches for ten days, she sought to place an order for 50 sample yards of the design in various color combinations, but he refused unless defendant placed a minimum order for 3000 yards. At this point, according to plaintiff, defendant decided not to order the fabric from plaintiff.

Plaintiff sent its sketches of the design to a company in Korea which printed it on fabric. Plaintiff received the first shipment of fabric on June 1, 1985. Khayyam testified that plaintiff immediately began selling the fabric printed with the bow tie design to its customers and that each yard sold contained a copyright notice. Plaintiff submitted fabric printed with the bow tie design to the Copyright Office on August 20, 1985, and received a copyright certificate effective August 23, 1985.[1]

In March 1986, Roth purchased a dress at Lord & Taylor department store in New York City bearing the defendant's name which was imprinted with a design substantially similar to plaintiff's bow tie design. Plaintiff contends that defendant copied the design shown to it in March 1985, and subsequently sold dresses that infringed plaintiff's copyright in the design.

Defendant denies copying plaintiff's design, and contends that it never saw plaintiff's design, but rather ordered its own design from King Company of Japan, through King's American representative, Chori America Inc. Chin, defendant's designer, categorically denied that she met with representatives of Cameron in March 1985. According to Chin, the only time she met with Cameron representatives during the year 1985 was in late May or early June, at which time she was shown an "egg" pattern, not a bow tie pattern.

Chin testified that on April 15, 1985, she and her assistant met with representatives of Chori America and King Company and were shown a bow tie pattern bearing Japanese registration number KJN117.[2] Tadami Murahara of Chori America corroborated Chin's testimony, and testified that Chin expressed interest in King Company's design. On May 5, 1985, Nipon ordered 50 yards of the design in each of three color combinations from King Company,[3] and received the samples on July 2, 1985.[4] On July 26, 1985, Nipon ordered 3000 yards of the material from King Company and on October 7, 1985, placed an order for an additional 2700 yards.

While the principles that govern the issues are clear, their determination turns upon resolving a sharp factual conflict between plaintiff's and defendant's witnesses. Assuming plaintiff's design meets the requirement for copyright protection of originality, which defendant disputes, a

---

1. Plaintiff's Exh. 4.

2. Defendant's Exh. A.

3. Defendant's Exh. D.

4. Defendant's Exh. E.

sharp issue of fact exists as to when Chin first saw the "bow tie" design. She denied that, as plaintiff's witnesses testified, it was shown to her by plaintiff's representatives in March 1985 when they assert they left sketches with her for a week or two. To the contrary, Chin testified that she first saw the design on April 15, 1985, when visited by representatives of King Company and that plaintiff never showed her a "bow tie" design.

■ "To prevail on a claim of copyright infringement, a plaintiff must show both ownership of a valid copyright and infringement."[5] Infringement may be established by evidence of direct copying or, "in the absence of direct copying, 'a plaintiff may prove copying by showing access and "substantial similarity" of the two work.' "[6] Substantial similarity is judged from the perspective of the ordinary observer. As Judge Learned Hand said, substantial similarity exists if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them and regard their aesthetic appeal as the same."[7]

■ There can be no doubt that plaintiff's copyrighted design and the design on defendant's dresses are substantially similar.[8] Nevertheless, upon a review of all the evidence and an evaluation of the credibility of the witnesses, the Court finds that assuming plaintiff has established originality of its design, plaintiff has failed to carry its burden of proof by a fair preponderance of the evidence that defendant copied Pattern 137.

Plaintiff offered the testimony of three of its employees, but failed to introduce either any corroborative testimony from independent parties or any documentary evidence to support its claims. By contrast, defendant offered the testimony of Murahara, an independent third party having a commercial relationship with both plaintiff and defendant, who testified that defendant received the design from the King Company on April 15, 1985.

The primary factual conflict is between the testimony of Chin and that of Khayyam and Roth. The Court finds that Chin was an impressively credible witness. Not only did Chin testify that she did not meet with plaintiff's representatives at any time during March 1985, but also that she met with no fabric salespersons during that month because she was working to complete her fall line of fashions by an April 12 deadline. Moreover, both Chin and Cameron's president, Khayyam, testified that Nipon only bought fabric designs on a "confined" basis—only designs for which it would be the exclusive seller. In unrebutted testimony, Chin testified that after being shown an "egg" pattern by plaintiff in May or June 1985 that she liked, she learned it was available from a competing studio. She therefore refused to purchase plaintiff's "egg" design for the sole reason that Nipon would not have been the exclusive supplier of garments bearing that pattern. Had she seen plaintiff's version of the bow tie pattern in March 1985, as plaintiff's witnesses claimed, ordering it from King two months later would have been contrary to Nipon's policy of purchasing only exclusive designs.

Plaintiff points to the fact that its bow tie design appeared in the June 19, 1985

5. *Gemveto Jewelry Co., Inc. v. Jeff Cooper Inc.,* 568 F.Supp. 319, 329 n. 44 (S.D.N.Y.1983); *see also Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985); *Eckes v. Card Prices Update,* 736 F.2d 859, 861 (2d Cir.1984); *Knickerbocker Toy Co. v. Azrak-Hamway Int'l, Inc.,* 668 F.2d 699, 702 (2d Cir.1982); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2d Cir.1977).

6. *Eckes v. Card Prices Update,* 736 F.2d 859, 863 (2d Cir.1984) (quoting *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2d Cir.1977)); *see also Knickerbocker Toy Co. v.*

*Azrak-Hamway Int'l Inc.,* 668 F.2d 699, 702 (2d Cir.1982).

7. *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960); *see also Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 911 (2d Cir.1980); *Malden Mills, Inc. v. Regency Mills, Inc.,* 626 F.2d 1112, 1113 (2d Cir.1980); *Ideal Toy Corp. v. Fab-Lu Ltd.,* 360 F.2d 1021, 1022 (2d Cir.1966).

8. Compare Plaintiff's Exhs. 3A and 3B with Plaintiff's Exh. 6 and Defendant's Exhs. E, J and L.

issue of Women's Wear Daily as evidence that defendant had access to its copyrighted design. However, not only did Chin testify that she only read Women's Wear Daily when she had time and denied that she had seen the June 19th issue, but the documentary evidence introduced by defendant and the testimony of Murahara establish that Nipon ordered the bow tie pattern from King Company on May 5th, six weeks before it appeared in Women's Wear Daily.

Finally, the evidence showed that the fabric Nipon ordered from King Company was more expensive and of lower quality than the fabric produced by plaintiff. It defies logic and good business judgment to conclude that after rejecting a design it could have purchased from Cameron on an exclusive basis in March 1985, as plaintiff's witnesses testified, that defendant subsequently purchased an infringing design of lesser quality at a *higher* cost. While not conclusive by itself, the evidence undermines plaintiff's contention that defendant sought to "knock off" plaintiff's design.

In sum, the Court finds that while plaintiff's and defendant's design are substantially similar, defendant neither had access to nor copied plaintiff's design. Accordingly, judgment may be entered for the defendant dismissing the complaint.[9] The foregoing shall constitute the Court's findings of fact and conclusions of law.

### ATTORNEY'S FEES

■ Defendant, as the prevailing party, seeks costs and attorney's fees under section 505 of the copyright statute.[10] Section 505, unlike its predecessor section 116, makes the award of costs and attorney's fees discretionary.[11] Our Court of Appeals has recognized a distinction in the award of fees to a prevailing plaintiff and an award

to a prevailing defendant. It has held that attorney's fees are generally awarded to prevailing plaintiffs to encourage the assertion of colorable claims and to deter infringement; that fees should not be awarded to a prevailing defendant when plaintiff's claim is colorable since such awards would diminish the intended incentive to bring such actions.[12] While the Court has rejected the testimony of the witnesses upon whom plaintiff relied to sustain its claims, it cannot be said that plaintiff failed to advance a colorable claim. Accordingly, the Court denies defendant's request for attorney's fees but allows its costs and expenses, including the cost of the trial minutes, totalling $450.10.

So ordered.

---

**9.** Plaintiff did not introduce, nor does this Court find, evidence that defendant engaged in unfair competition.

**10.** 17 U.S.C. § 505.

**11.** Prior to the enactment of the current statute, the awarding of attorney's fees to the prevailing litigant was within the court's discretion, but the court was required to award costs. The current statute makes both decisions discretionary. Compare 17 U.S.C. § 116 (1976) with 17 U.S.C. § 505 (1982).

**12.** *Roth v. Pritikin,* 787 F.2d 54, 56–58, (2d Cir.1986); *Diamond v. Am-Law Pub. Corp.,* 745 F.2d 142, 148 (2d Cir.1984).